**Edward R. SZWYD, Debtor.**

**Jack E. Houghton, Jr., Chapter 7 Trustee, Appellant,**

v.

**Edward R. Szwyd, Appellee.**

**BAP No. MW–06–035.
Bankruptcy No. 05–50837–HJB.**

United States Bankruptcy Appellate Panel of the First Circuit.

July 6, 2007.

884

Richard I. Isacoff, Pittsfield, MA, for Appellee.

Jack E. Houghton, Esq., Pittsfield, MA, pro se.

Before LAMOUTTE, CARLO, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

### *Introduction*

KORNREICH, Bankruptcy Judge.

This appeal by Jack E. Houghton, Jr., the chapter 7 trustee, is from the bankruptcy court's order overruling his objection to the debtor's claim of a homestead exemption under Massachusetts law.

The debtor, Edward R. Szwyd, was the sole trustee and sole beneficiary of the nominee trust holding legal title to his principal residence. He attempted to acquire an estate of homestead by recording a declaration as beneficiary of the nominee trust holding title to the property. The chapter 7 trustee's primary objection is that the debtor, as the holder of a beneficial interest, is not eligible for a homestead as an "owner" of real estate within the meaning of the exemption statute, MASS. GEN. LAWS ch. 188, § 1 (2007).

In a well-written opinion, the bankruptcy court determined that: (a) the nominee trust had ceased to exist as a separate entity when the debtor became its sole trustee and sole beneficiary; (b) at that moment, all legal and equitable interests in the property had merged and vested in the debtor making him the sole owner of his principal residence; (c) as the owner, the debtor was eligible to acquire an estate of homestead under MASS. GEN. LAWS ch. 188, § 1 (2007), by the time he recorded his declaration; and (d) the debtor's acquisition of the exemption was perfected under MASS. GEN. LAWS ch. 188, § 2 (2007), because the nominee trust was nothing more than an alias when he executed and properly recorded the declaration. *See In re Szwyd,* 346 B.R. 290, 293–94 (Bankr. D.Mass.2006).

For the reasons set forth below, we AFFIRM.

## Background

 The property in question, located in Great Barrington, Massachusetts, was acquired by the debtor's parents, Stanley Szwyd and Maria M. Szwyd, as co-trustees of the Myszka Nominee Realty Trust. Their deed of acquisition is dated April 10, 1992. It was recorded on that date at the Southern Berkshire Registry of Deeds along with the trust declaration. A nominee trust is "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties." *Roberts v. Roberts*, 419 Mass. 685, 646 N.E.2d 1061, 1062 (1995) (internal citations omitted). "Unlike ... a [traditional trust] the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of ... the beneficiaries." *Id.* (internal citations omitted). "Nominee trusts have characteristics of both agency and trust; the trustee is an 'agent-trustee' who holds title to property 'for the benefit of and subject to the control of another.'" *Id.* at 1063. Nominee trusts are subject to the rules of agency for certain purposes. *Id.* Contrary to the norm, the Myszka Nominee Realty Trust gives wide powers to the trustees with respect to the real property.[1] But those powers are ephemeral. The beneficiaries have ultimate control because of their unfettered rights to terminate the trust and replace the trustees.

On June 17, 1992, the debtor, as sole beneficiary of the trust, replaced his parents and appointed himself trustee by recording a written acceptance of appointment. Since then he has been the sole trustee and sole beneficiary. The debtor asserts that he has treated the property as his own as if there had been no trust. As proof, he points to a mortgage given by him in his own name. The record is sparse on this topic and his giving of the mortgage appears to be in dispute. What is clear is that the debtor and his family have occupied the property as their principal residence at all crucial times.

On February 12, 1996, the debtor recorded a declaration of homestead "as beneficiary owning and occupying as my principal residence the said real estate...."[2]

On October 16, 2005, the debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code with the U.S. Bankruptcy Court for the District of Massachu-

---

1. *See* the declaration of trust at paragraphs 7 and 8, Appellant R.App., pp. 51–52. Also see the declaration of trust at paragraph 5, providing that the co-trustees "shall generally have the absolute control, management and power to sell, transfer, convey and otherwise dispose of the trust property as if they were the absolute owners thereof, free from the control of the Beneficiaries ...". Appellant R.App., p. 48.

2. The debtor's homestead declaration provides:

 EDWARD R. SZWYD, a beneficiary of the MYSZKA NOMINEE REALTY TRUST, which holds record title to the premises at 366 North Plain Road, Village of Housatonic, Town of Great Barrington, Berkshire County, Massachusetts, and as beneficiary owning and occupying as my principal residence the said real estate, acquired by deed from Thomas M. Reilly and Elinor M. Reilly, dated April 10, 1992, and recorded in the Southern Berkshire Registry of Deeds, in Book 804, Page 350, hereby declare (sic) a homestead in said premises under the provisions of Chapter 188, Section 1, of the General Laws of Massachusetts.

 I expressly reserve the right to myself and my spouse and to the survivor of us, and the Executor or Administrator of the survivor of us, to revoke and rescind this Homestead as to ourselves and our minor, unmarried children.

 Executed as a sealed instrument this 12th day of February, 1996.

 ——s/——————

 Edward R. Szwyd

setts.[3] The schedule of real property presents the description and location of the residence as "366 North Plain Road, Great Barrington, MA—Debtor is Trustee and Beneficiary of Myszka Nominee realty (sic) Trust which holds legal title to the property." The nature of his interest in the property is shown as an "Equitable interest." The schedule of exempt property reveals the same description and specifies the applicable law to be "Mass. Gen. Laws c. 188, § 1".[4] The value of the exemption is said to be $225,000.75 with a current market value of $450,000.00. The schedule of creditors holding claims secured by property of the debtor shows a mortgage in the amount of $224,999.25. The description of the property subject to the mortgage is the same as the description used on the other schedules. No date of incurrence appears with respect to the mortgage. Two I.R.S. liens incurred in 2002 are disclosed on property with the same description. The case was converted to chapter 7 on January 6, 2006.

A residence exemption does not simply arise as a matter of law in Massachusetts as it does in other jurisdictions. In Massachusetts, one may acquire an estate of homestead through appropriate language in the deed of conveyance at the time of acquisition or, after title has been acquired, by recording a proper declaration in the registry of deeds. *See Shamban v. Masidlover*, 429 Mass. 50, 705 N.E.2d 1136, 1139 (1999); *Dwyer v. Cempellin*, 424 Mass. 26, 673 N.E.2d 863, 867 (1996). "[A] homestead 'exemption' in Massachusetts law takes the form of an estate in land and, as estates in land generally do, requires a *writing* both to acquire and to terminate." *In re Webber*, 278 B.R. 294, 297 (Bankr.D.Mass.2002)(emphasis in original). The applicable statute is Mass. Gen. Laws ch. 188, §§ 1 and 2 (2007).[5] Eligibility is established under § 1. The applicable language is:

> An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases. . . .

The manner of acquisition is imposed in § 2. It provides, in pertinent part:

> To acquire an estate of homestead in real property, the fact that it is designed to be held as such shall be set forth in the deed of conveyance by which the property is acquired; or, after the title has been acquired, such design may be declared by a writing duly signed, sealed and acknowledged and recorded in the registry of deeds for the county or district in which the property is situated.

This case involves a post-acquisition attempt to establish an estate of homestead. The debtor bases his claim of exemption upon the declaration he recorded as "bene-

---

**3.** This case was commenced before October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Public Law 109–8, 119 Stat. 23.

**4.** A Massachusetts debtor in a bankruptcy case is permitted to choose between state and federal exemptions. *See Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1, 4 (1st Cir.2003); *Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (1st Cir. BAP 2006).

**5.** Hereafter, sections 1 and 2 of Mass. Gen. Laws ch. 188 (2007) are referred to as § 1 and § 2.

ficiary owning and occupying" his principal residence. Relying upon *Assistant Recorder of Bristol County v. Spinelli*, 38 Mass.App.Ct. 655, 651 N.E.2d 411, 413 (1995), the chapter 7 trustee objected on the grounds that a beneficial owner is not an "owner" within the meaning of § 1. In *Spinelli*, the Appeals Court of Massachusetts, an intermediate appellate court, held that the homestead statute must be strictly construed and that it "does not provide for the application of the statute to property held in trust." [6] *Id.* at 413. The debtor stressed three points in his response: First, that he had exercised complete dominion and control of the property at all times; second, that the *Spinelli* court wrongly relied upon *Kirby v. Assessors of Medford*, 350 Mass. 386, 215 N.E.2d 99 (1966), a tax exemption case, in applying the strict construction standard to the homestead statute; and, third, that the liberal construction of the homestead statute used by the Supreme Judicial Court ("S.J.C.") to protect the family home would allow for an exemption based upon a beneficial interest. *See Dwyer*, 673 N.E.2d at 866. The debtor also argued that even if he had failed to qualify for the exemption as an owner, his beneficial interest would make him "one ... who rightfully possess[es] the premise[s] by lease or otherwise ..." under § 1.

The bankruptcy court observed that the refusal of the *Spinelli* court to treat the holder of a trust interest as an "owner" was based upon the strict construction standard used in *Kirby* to interpret the Massachusetts tax exemption statute. *See Spinelli*, 651 N.E.2d at 414 (citing *Kirby*, 215 N.E.2d at 102). The bankruptcy court also mentioned that the "*Spinelli* decision only tangentially touched on the 'or one or all who rightfully possess by lease or otherwise' language" with respect to whether the holder of a beneficial interest would qualify as a rightful possessor.[7] The bankruptcy court then weighed *Spinelli* against the *Dwyer* court's application of liberal construction to the homestead statute. Quoting *Dwyer*, the bankruptcy court said:

> Tax exemptions release taxpayers from their obligations to bear their share of the cost of government and, in doing so, disturb the objective of equalizing the distribution of the tax burden.... In contrast, homestead exemptions help bankrupts and their families from becoming public charges. Accordingly, homestead exemption statutes should be construed liberally so as to carry out their underlying purpose—to protect the family residence.

Yet, despite the *Dwyer* approach, the bankruptcy court was reluctant to tackle

---

**6.** Spinelli's declaration of homestead showed her to hold her principal residence as trustee of an investment trust. 651 N.E.2d at 411. That investment trust was a nominee trust. *Id.* at n. 3. Stressing her occupation of the property as her principal residence, Spinelli argued that the right to acquire a homestead exemption depends upon a declarant's ownership *or* occupation of the property claimed as exempt. However, to cover all bases, she also claimed to be the owner as the holder of both legal and equitable title. Her claim of legal title rested on her being the trustee of the investment trust holding legal title to the property. Her claim of equitable title rested on her being the beneficiary of the living trust holding the beneficial interest in the invest-

ment trust that held legal title. *Id.* at 413. The appeals court concluded that Spinelli's "decision to separate legal and equitable ownership of the property affords her the protection provided in the investment trust and the living trust, but renders her ineligible for the protection afforded by a declaration of homestead." *Id.* at 413–14.

**7.** One could argue otherwise. Citing *Thurston v. Maddocks*, 88 Mass. (6 Allen) 427 at 428, n. 6 (1863) with respect to an earlier version of the statute, the *Spinelli* court said, "[t]hat language is not 'broad enough to include ... equitable title....' "

trust beneficiary eligibility without further guidance from the S.J.C.[8] However, instead of certifying legal questions on the presumptive character of the debtor's interest in the real estate, the bankruptcy court scrutinized the facts to find the actual nature of the debtor's interest.[9] The outcome was the correct determination that the nominee trust had ceased to exist when the debtor became its sole trustee and its sole beneficiary. *See Atkins v. Atkins,* 279 Mass. 1, 180 N.E. 613, 614 (1932)(a trust terminates when a sole trustee co-mingles property in her own name so that no distinguishable trust property remains); *Cunningham v. Bright,* 228 Mass. 385, 117 N.E. 909, 910 (1917)(a trust terminates when the same person becomes the sole trustee and sole beneficiary); *In re Lyons,* 193 B.R. 637, 645 (Bankr. D.Mass.1996)(same); *Langley v. Conlan,* 212 Mass. 135, 98 N.E. 1064, 1065 (1912)("where the legal and equitable title of real estate both vest in the same person, the equitable title will merge in the legal estate, and absolute ownership will ensue divested of the trust"). After merger of title, the trust was nothing more than an alias for the debtor. *See Cunningham,* 117 N.E. at 909.

Having determined the debtor's eligibility under § 1, the bankruptcy court turned to the question of the adequacy of the declaration under § 2. Remarking that the statute required " 'a writing, duly signed, sealed and acknowledged and recorded in the registry ...' ", the bankruptcy court decided that the debtor's acquisition of the homestead was complete because the declaration had been executed and properly recorded after he had become the owner of the property. This appeal ensued.

### Jurisdiction

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Id.* at 646 (citations omitted). Jurisdiction lies in this instance because orders granting or denying exemptions are appealable as final orders. *See Fiffy v. Nickless (In re Fiffy),* 293 B.R. 550, 553 (1st Cir. BAP 2003); *Howe v. Richardson (In re Howe),* 232 B.R. 534, 535 (1st Cir. BAP 1999), *aff'd,* 193 F.3d 60 (1st Cir.1999).

---

8. The bankruptcy judge's disinclination did not stem from timidity. He opened his opinion with the following comment:

> This Court feels compelled to express at the onset its growing frustration with the application of the Massachusetts Homestead Statute. While it is well settled that the statute's purpose is to protect the family home, *see infra Dwyer v. Cempellin,* 424 Mass. 26, 29–30, 673 N.E.2d 863, 866 (1996), the statute's ambiguities have proven to be legion and its benefits 1) appear to be available only for those with legal training or resources necessary to locate a registry of deeds and record what is, for a layperson, a relatively complex document, and

> 2) may be easily and inadvertently lost by statutory language and conditions that are hyper-technical and often counterintuitive.

9. Two questions for the S.J.C. were suggested by the bankruptcy court:

> Does this guidance from the Supreme Judicial Court [*Dwyer*] mean that the beneficial owners of trusts, who are in possession of the *res,* should also now be considered eligible to be beneficiaries of the protections afforded by the Massachusetts Homestead Statute? Did the *Spinelli* court go too far in its restrictive interpretation of the words "or one or all who rightfully possess by lease or otherwise?"

## Standard of Review

■ Appellate courts reviewing bankruptcy court decisions generally apply the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). There are no findings of fact in dispute, so our review of the bankruptcy court's conclusions of law is *de novo.*

## Discussion

The chapter 7 trustee raises no challenge to the bankruptcy court's findings or conclusions on the occurrence of the merger of title. Instead, he maintains that the merger should have no impact because (a) it was the debtor's intention to acquire the homestead as the holder of a beneficial interest in a nominee trust, (b) the holder of such an a interest is not eligible to acquire an estate of homestead under § 1, and (c) the debtor's use of a nominee trust as an estate planning device precludes him from acquiring a homestead exemption. In support of these arguments the trustee insists that *stare decisis* makes *Spinelli* binding authority.

The debtor urges that: (a) the merger of title makes him eligible for the exemption under § 1; (b) the authorities mandate liberal construction of § 1 so that one who is a trust beneficiary may be an eligible owner; and (c) apart from ownership, a trust beneficiary may be eligible for the exemption as one who is in rightful possession of his principal residence.

■ The arguments of the parties indicate that the concerns of each side are chiefly with the quality of the debtor's ownership or rightful possession of the property and, thus, his eligibility under § 1 to acquire a homestead. These concerns are misguided. As a result of the chapter 7 trustee's concession on the happening of the merger of title, the bankruptcy court's decision on eligibility is final. As discussed above, the bankruptcy court correctly determined that the nominee trust had ceased to exist when the debtor became its sole trustee and its sole beneficiary. At that point all legal and equitable title vested in the debtor and he became an owner in rightful possession of his principal residence within the meaning of § 1.

Consequently, the chapter 7 trustee's positions on the nature of the debtor's trust interest and the binding effect of *Spinelli* have no bearing on this appeal. However, in passing, we note that *Spinelli* is not a controlling authority.[10] Further, had we been asked rightly to review the eligibility of the debtor to acquire the homestead exemption as the holder of a beneficial interest in a nominee trust or as "one ... who rightfully possess[es] ... by lease or otherwise ....", we would have certified those questions to the S.J.C. Neither *Spinelli* nor *Dwyer* fully settles those issues and there is no definitive ruling in any other case "tending convincingly to show how" the S.J.C. would decide those questions. *See Michelin Tires (Canada) Ltd. v. First National Bank of Boston,* 666 F.2d 673, 682 (1st Cir.1981).

■ But problems remain. The trustee has raised a challenge based upon the debtor's intention to acquire the home-

---

10. We point this out with great humility, recognizing that we, like the Appeals Court of Massachusetts, are an intermediate appellate court. Such courts render decisions knowing that their judgments will apply only in the matters before them and that their reasoning will be adopted by other courts in other cases only if it is worthy.

stead as a trust beneficiary. This challenge takes us beyond the issue of the debtor's eligibility under § 1. A successful acquisition also requires compliance with the requirements of § 2. The trustee's concerns with the impact of the merger invoke the essential ingredient of an acquisition by declaration under § 2, namely, that it be the declarant's design to hold the real property as an estate of homestead. *See* § 2. This requirement is the only one under § 2 not examined specifically in the bankruptcy court's memorandum opinion. The other requirements—that the declaration be in writing, that it be signed, sealed and acknowledged, and, that it be properly recorded—were addressed and are not in dispute. Our task is to determine if the order below satisfactorily covers the statutory design requirement.

▉▉▉▉ We apply Massachusetts law to this aspect of the case. *See Perry,* 357 B.R. at 178. In so doing, we rule as we believe the S.J.C. would interpret the statute. *See Hildebrandt v. Collins (In re Hildebrandt),* 320 B.R. 40, 44 (1st Cir. BAP 2005). A declarant's statement of design is the core of a homestead declaration. It serves to demonstrate a declarant's intention by showing "the fact that [the real property] is *designed* to be held as [an estate of homestead]...." *See* § 2 (emphasis supplied). We glean this purpose from the plain and unambiguous language of the statute. *See Masidlover,* 705 N.E.2d at 1139; *Boston Police Patrolmen's Ass'n v. City of Boston,* 435 Mass. 718, 761 N.E.2d 479, 480 (2002). When

statutory language is plain and unambiguous it should be enforced unless doing so would lead to an absurd result or be contrary to the legislature's manifest intention. *Id.*

To design is "to conceive and plan out in the mind." *Webster's Third New Int'l Dictionary* 611 (1993). A design is "a mental project or scheme in which means to an end are laid down." *Id.* Applying these definitions to the design language of § 2 will not lead to an absurd result or be contrary to the legislature's manifest intention.

So, what was the debtor's scheme? Was it to protect *only* his beneficial interest in the trust holding title to his personal residence or was it his design to acquire the homestead as an *owner* of real estate *because* of his beneficial interest? The trustee would have us believe that the language of the declaration points to a narrowly focused plan to protect a beneficial interest. The bankruptcy court's conclusion is that the debtor was the holder of all legal and equitable title when he "himself" executed and properly recorded the declaration.[11] At that moment the trust was simply an alias.

The debtor's expression of design appears on the face of his declaration of homestead. He states: "EDWARD R. SZWYD, a beneficiary of the MYSZKA NOMINEE REALTY TRUST, which holds record title to the premises ... and as beneficiary owning and occupying as my residence the said real estate ... hereby declare (sic) a homestead in said premis-

---

11. The concluding paragraph of the bankruptcy court's opinion states:

> To acquire a valid estate of homestead, Massachusetts law requires a declaration 'by a writing duly signed, sealed and acknowledged and recorded in the registry of deeds for the county or district in which the property is situated.' G.L. 188, § 2. The Debtor *himself* executed the declaration of

homestead for the Residence and properly recorded it in the Southern Berkshire Registry of Deeds. By that time, the legal and equitable interests in the Residence had merged and vested solely in the Debtor. As such, the Massachusetts Homestead Exemption was his to claim. G.L. c. 188, §§ 1, 2.

(emphasis supplied).

es...." The declaration is signed by the debtor without reference to his beneficial interest and is acknowledged by him to have been his free act and deed without reference to his beneficial interest.

Examining the declaration in its entirety, as we are compelled to do, *see Robert Indus., Inc. v. Spence*, 362 Mass. 751, 291 N.E.2d 407, 409–10 (1973), we conclude that it may be understood as a plan by the debtor to acquire the homestead as an owner because of his beneficial interest. This reading arises from the words "as beneficiary *owning* and occupying as my personal residence ...." (emphasis supplied). That phrase suggests that the debtor viewed himself to be an "owner" of real property because of his beneficial interest in the nominee trust. The debtor's scheme was to establish an estate of homestead as an owner.

 Granted, for all of the reasons discussed above, such a stand, without a merger of title, may not have met the eligibility requirements of § 1. But one's eligibility for a homestead under § 1 and one's design to acquire a homestead under § 2 are separate concerns. Compliance with each section is to be measured by a separate inquiry. Acquisition will be complete when one who is eligible declares "the fact that real property is designed to be held as [an estate of homestead]...." § 2.

In this instance, the debtor's eligibility was established by his actual status as the owner of the property. His expression of design was to hold his principal residence as an estate of homestead. The bankruptcy court's reading of the debtor's declaration of homestead is accurate, and its conclusions are correct in all respects. We AFFIRM.